**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AIG BAKER STERLING HEIGHTS, LLC, A. B. OLATHE II LIMITED PARTNERSHIP,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | **CONSOLIDATED** |
| **v.** | ] | **LEAD CASE:  CV-03-BE-1930-S** |
| | ] | **MEMBER CASE: CV-03-BE-2901-S** |
| **AMERICAN MULTI-CINEMA, INC.** | ] | |
| | ] | |
| **Defendant.** | ] | |

**<u>MEMORANDUM OPINION</u>**

This case is before the court on remand from the Eleventh Circuit Court of Appeals.  *See AIG Baker Sterling Heights, L.L.C. v. American Multi-Cinema, Inc.*, 508 F.3d 995 (11th Cir. 2007).  The Court of Appeals held that this court erred by modifying the arbitration award and directed this court to determine whether Alabama law or Missouri law governs the availability and amount of prejudgment interest.  For the reasons stated below, the court concludes that, under Alabama's choice-of-law principles,  Missouri law controls the availability and amount of prejudgment interest.  Under Missouri law, Plaintiff is entitled to prejudgment interest at a rate of 9% *per annum*.

**I.  BACKGROUND**

This case arises out of an award issued in an arbitration proceeding between Plaintiff AIG Baker Sterling Heights, LLC ("AIG") and Defendant American Multi-Cinema, Inc. ("AMC") relating to AMC's liability to AIG for real estate taxes on two properties owned by AIG and leased to AMC.   On June 19, 2003, the arbitrators issued an award totaling $866,425.18, based

in part on the parties' stipulated facts regarding AMC's potential tax liability on one of the properties owned by AIG and leased to AMC.  The stipulated facts stated, in part, that AMC's potential tax liability on the property for the period January 1, 2002 through June 28, 2002 was approximately $226,771.00.  The stipulation further provided that AMC had made "$0.00" payments for that period.

Following the arbitrators' decision, AMC discovered that the stipulated facts did not reflect taxes AMC actually paid directly to the taxing authority.  In fact, AMC paid $248,624.57 in real estate taxes directly to the taxing authority for the first half of 2002 instead of the "$0.00" payments as stated in the stipulation.  AMC contended that the failure of the stipulated facts to reflect this amount constituted a material mistake and that this court should modify the arbitration award, as authorized by 9 U.S.C. § 11(a).  This court agreed, and concluded that the error in the stipulated facts constituted an "evident material mistake" justifying modification of the award.  Having modified the award, the court denied AIG's request for interest on the arbitration award from the time of the award until the court's judgment.

On appeal, the Eleventh Circuit Court of Appeals held that this court did not have the authority to modify the arbitration award under these circumstances.  Citing to *Webster's II New Riverside University Dictionary*, the Court of Appeals stated that "[t]o make a 'mistake' is to 'understand wrongly.'" *AIG Baker*, 508 F.3d at 999.  The arbitration panel, the Court noted, suffered from "ignorance," or a "lack of knowledge" -- not a wrong understanding. *Id.* at 999-1000.  This court notes that many more widely-available dictionaries define the <u>noun</u>[1] "mistake" to include a lack of knowledge. *See  Webster's New Collegiate Dictionary* 736 (1973) ("a wrong

_____

[1] The FAA uses the noun form of "mistake" rather than the verb form defined by the Court of Appeals.

-2-

action or statement proceeding from faulty judgment, inadequate knowledge, or inattention");

*Webster's Third New Int'l Dictionary* 1446 (1986) ("a wrong action or statement proceeding

from faulty judgment, inadequate knowledge, or inattention"); *The Random House Dictionary of*

*the English Language* 1232 (1987) ("an error in action, calculation, opinion, or judgment caused

by poor reasoning, carelessness, insufficient knowledge, etc.").  Nevertheless, this court must

follow the decision of the Court of Appeals, even when it believes it to be a "mistake."

Consequently, having been presented at this time with no ground for modification other than

section 11(a), this court must confirm the arbitration award.

The Court of Appeals also held that this court's denial of AIG's request for prejudgment

interest was error, whether based on federal law or based upon the court's modification of the

arbitration award.  The Court of Appeals "join[ed] our sister circuits that have addressed this

question and h[e]ld that state law governs the availability and amount of prejudgment interest in

diversity cases involving the Federal Arbitration Act."  *AIG Baker*, 508 F.3d at 1002.  The Court

remanded the case to this court to determine which state's law governs prejudgment interest and

to then apply that state's law to determine the availability and amount of prejudgment interest, if

any.

## II.  PREJUDGMENT INTEREST

The parties agree that, under Alabama choice-of-law principles, the availability and

amount of interest on contract-based actions is determined by applying the law of the place of

performance.  *Cubbedge, Hazlehurst & Co. v. Napier*, 62 Ala. 518, 522 (1878).  The parties do

not agree, however, on which agreement's performance this case hinges -- the arbitration

agreement or the underlying leases.  The arbitration agreement was "performed" in Missouri,

where the arbitration took place.  The leases were "performed" in Alabama, at least with respect

to the tax payments at issue,[2] because payments were made in Alabama.

AMC argues that Alabama law controls because its payment of the taxes at issue to AIG should have taken place in Alabama pursuant to the parties' leases.  This position is reasonable.  After all, the arbitrators' award was based upon AMC's obligations under the leases.  AMC did not cite, however, and this court could not find, any case in any jurisdiction making a distinction between an arbitration agreement and the underlying contract(s) for purposes of prejudgment interest after an arbitration award.  Rather, under Alabama law, "[a] submission to arbitration of a controversy, when followed by an award, has a distinct legal import and contains the essential features of a binding contract."  *Smith-Schultz-Hodo Realty Co. v. Henley-Spurgeon Realty Co.*, 140 So. 443, 444 (Ala. 1932).  Moreover, an arbitration award is a bar to any action upon the original dispute.  *See* Janelle Mims Marsh & Charles W. Gamble, *Alabama Law of Damages* § 17:15 (5th ed. 2004) (citing *Gardner v. Newman*, 33 So. 179 (Ala. 1902); *McJimsey v. Traverse*, 1 Stew. 244 (Ala. 1827)).

Applying these principles to this case, the court must distinguish between the arbitration agreement and the underlying leases.  This court has been called upon to confirm an arbitration award made pursuant to an arbitration agreement with "distinct legal import" and, therefore, cannot look upon the underlying contractual dispute that was, in effect, subsumed by the arbitration award.  Although characterizing the arbitration agreement as the agreement "performed" for purposes of Alabama's choice-of-law doctrine may not be the most intellectually satisfying option, it fits within the logic of the longstanding Alabama Supreme Court precedent cited above.  In addition, doing so fulfills the much more logical view that arbitration awards

---

[2] Although the leased properties were located in Michigan and Kansas, the leases provided that AMC's payments for real estate taxes be mailed to AIG in Birmingham, Alabama.

should be treated analogously to judicial judgments, for which this court would apply the law of the state where the judgment was rendered. *See Old Republic Ins. Co. v. Lanier*, 790 So. 2d 922, 928 (Ala. 2000) ("In Alabama, as elsewhere, an arbitration award 'partakes of the nature of a judgment or decree of a competent court . . . .'") (quoting *Glens Falls Ins. Co. of N.Y. v. Garner*, 155 So. 533, 534 (1934)); *Jeffers v. Belmonte Hills Owners' Ass'n, Inc.*, 585 So. 2d 75, 77 (Ala. Civ. App. 1991) (noting that the "effect of a foreign judgment is based on the law of the state in which the judgment was rendered").

Having decided that Missouri law applies, the court must award interest at 9% *per annum* from the date of the arbitrators' award until the date of the court's confirmation. Mo. Rev. Stat. § 408.040(1) (2001). Thus, AIG is entitled to 9% *per annum* on the full amount of the award -- $866,425.18 -- from June 19, 2003, the date of the award, until May 22, 2006, at which time AMC paid AIG $539,375.75.[3] From May 23, 2006 until today, when the court will confirm the arbitrators' award by separate order, AIG is entitled to interest on the remaining $327,049.43.

### III. CONCLUSION

Absent any argument at this time that the arbitration award should be modified on some ground other than section 11(a), under the opinion of the Eleventh Circuit Court of Appeals, this court must CONFIRM the arbitrators' award of $866,425.18 issued on June 19, 2003. For the reasons stated above, the court concludes that Missouri law governs the rate of interest accruing on the award. Accordingly, the court will award prejudgment interest of 9% *per annum* on the full $866,425.18 for the period from June 19, 2003 to May 22, 2006; and on $327,049.43 for

---

[3] The court agrees with AIG that AMC's earlier tender of this amount on June 23, 2003 could be perceived as an attempted accord and satisfaction. AIG rejected that tender, and this court concludes that it did not terminate the accrual of interest. The same holds true for AMC's tender of $78,424.86 on December 21, 2006.

period from May 23, 2006 to today's date.  The court will enter a separate final order consistent with this memorandum opinion.

DATED this 1st day of May, 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE