**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **AIG BAKER STERLING HEIGHTS, LLC, A. B. OLATHE II LIMITED PARTNERSHIP,** ] | |
| ] | |
| ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | **CONSOLIDATED** |
| **v.** ] | **LEAD CASE:  CV-03-BE-1930-S** |
| ] | **MEMBER CASE: CV-03-BE-2901-S** |
| **AMERICAN MULTI-CINEMA, INC.** ] | |
| ] | |
| ] | |
| **Defendant.** ] | |

**MEMORANDUM OPINION**

Before the court are "Defendant American Multi-Cinema's Motion for Partial Relief For

[*sic*] Judgment Pursuant to Rule 60(b)(5)" (doc. 59) and Plaintiffs' "Motion to Amend or Modify

Final Order" (doc. 61).  In its motion, Defendant American Multi-Cinema, Inc. ("AMC")

requests partial relief from this court's final judgment entered May 1, 2008 (doc. 58) on the

ground that AMC has satisfied a portion of the judgment, which confirmed an arbitration award

related to real estate taxes on property in Kansas.  Plaintiffs AIG Baker Sterling Heights, L.L.C.

and A. B. Olathe II Limited Partnership (collectively, "AIG Baker") request in their motion

certain revisions to the court's final order, as discussed below.  For the reasons that follow, the

court will GRANT both motions.

## I.  RELEVANT BACKGROUND

This case arises out of an award issued in an arbitration proceeding between Plaintiff AIG

Baker and Defendant AMC relating to AMC's responsibility for real estate taxes on two

properties owned by AIG Baker and leased to AMC.  The leases between AMC and AIG Baker

provided that AMC would pay its share of real estate taxes to AIG Baker, which would then pay the taxing authority. The parties were unable to agree upon the proper amount of taxes for which AMC was responsible; they submitted their dispute to arbitration. On June 19, 2003, the arbitrators issued an award totaling $866,425.18, based in part on the parties' stipulated facts regarding AMC's potential tax liability on one of the properties located in Olathe, Kansas. The stipulated facts stated, in part, that AMC's potential tax liability on the property for the period January 1, 2002 through June 28, 2002 was approximately $226,771.00.[1] The stipulation further provided that AMC had made "$0.00" payments for that period.

Following the arbitrators' decision, AMC discovered that the stipulated facts did not reflect taxes AMC actually paid directly to the taxing authority. Effective June 28, 2002, AIG Baker no longer owned the Kansas property at issue, and AMC's new landlord requested that AMC pay the taxes for the first half of 2002 -- during which time AIG Baker was still owner -- directly to the taxing authority. Accordingly, AMC paid $248,624.57 in real estate taxes directly to the taxing authority for the first half of 2002 instead of the "$0.00" payments as stated in the stipulation. When AIG Baker moved to confirm the arbitration award in this court, AMC contended that the failure of the stipulated facts to reflect this amount constituted a material mistake and that this court should modify the arbitration award, as authorized by the Federal Arbitration Act ("FAA") at 9 U.S.C. § 11(a). This court agreed, and concluded that the error in the stipulated facts constituted an "evident material mistake" justifying modification of the award. Having modified the award, the court denied AIG Baker's request for interest on the arbitration award from the time of the award until the court's judgment.

---

[1] The arbitrators ultimately concluded that AMC's share of the 2002 real estate tax liability was $226,771.76.

The Eleventh Circuit Court of Appeals reversed this court's decision.  *See AIG Baker Sterling Heights, L.L.C. v. American Multi-Cinema, Inc.*, 508 F.3d 995 (11th Cir. 2007).   The Court of Appeals looked to the "plain language of the [FAA]," and stated that "[t]o make a 'mistake' is to 'understand wrongly.'" *Id.* at 999 (quoting *Webster's II New Riverside University Dictionary* 759 (1984)).  The arbitration panel, the Court noted, suffered from "ignorance," or a "lack of knowledge" -- not a wrong understanding.  *Id.* at 999-1000.  Consequently, the Court of Appeals concluded that this court did not have the authority to modify the arbitration award on the basis of a "mistake."

The Court of Appeals also held that this court's denial of AIG Baker's request for prejudgment interest was error, whether based on federal law or based upon the court's modification of the arbitration award.  The Court of Appeals "join[ed] our sister circuits that have addressed this question and h[e]ld that state law governs the availability and amount of prejudgment interest in diversity cases involving the Federal Arbitration Act."  *AIG Baker*, 508 F.3d at 1002.  The Court remanded the case to this court to determine which state's law governs prejudgment interest and to then apply that state's law to determine the availability and amount of prejudgment interest, if any.

On remand, this court, of course, was required to confirm the arbitration award despite its disagreement with the definition of "mistake" used by the panel of the Eleventh Circuit Court of Appeals.  *See* docs. 57 & 58.  This court also looked to Alabama choice-of-law principles to determine whether prejudgment interest was governed by Alabama law or by Missouri law.  Looking to "the place of performance," the court concluded that Missouri law applied primarily because the arbitration award, which was made pursuant to an agreement, and which took on a "distinct legal import," occurred in Missouri.  Accordingly, the court confirmed the total

arbitration award of $866,425.18 and awarded prejudgment interest at the Missouri rate of 9% *per annum*. The court recognized that AMC had already paid AIG Baker $539,375.75 during the pendency of this action, leaving a balance of $612,147.56.

On May 7, 2008, AMC filed the current motion for partial relief from judgment pursuant to Fed. R. Civ. P. 60(b)(5). AMC requests relief from this court's final judgment in the amount of $226,771.76 -- the arbitrators' assessment of AMC's share of taxes for the period in which AMC paid taxes directly to the taxing authority -- plus the prejudgment interest on that amount. On May 8, 2008, AIG Baker filed its own motion to amend the final order. AIG Baker requests three modifications: (1) that the court delete that this case is "dismissed with prejudice;" (2) that the court rephrase its sentence regarding dismissal of AMC's counterclaims without prejudice; and (3) that judgment be entered in favor of both AIG Baker Sterling Heights, L.L.C. and A. B. Olathe II Limited Partnership.

On May 22, 2008, the court granted AMC's request to deposit with the court the undisputed balance of the judgment, $285,950.04. On June 3, 2008, AIG Baker moved to withdraw that amount plus interest; the court granted AIG Baker's request on June 16, 2008.

## II.  DISCUSSION

### A.     AMC's Rule 60(b)(5) Motion

AMC now requests, pursuant to Fed. R. Civ. P. 60(b)(5), that this court amend its final judgment to give AMC full credit for its direct payment to the taxing authority of the 2002 taxes at issue. Specifically, AMC requests a credit of $226,771.76 against this court's judgment confirming the arbitration award and relief from the prejudgment interest on that amount, $99,425.76.

Federal Rule of Civil Procedure 60(b)(5) provides, in relevant part:

> On motion and just terms, the court may relieve a party . . . from a
> final judgment, order, or proceeding [if] . . . the judgment has been
> satisfied, released or discharged; it is based on an earlier judgment
> that has been reversed or vacated; or applying it prospectively is no
> longer equitable."

Rule 60 "is a remedial rule that 'should be liberally construed in order to do substantial justice.'"

*United States v. Real Property & Residence Located at Rout 1, Box 111, Firetower Rd.*, 920 F.2d

788, 792 (11th Cir. 1991); *see also Hall v. Commissioner*, 805 F.2d 1511, 1515 (11th Cir. 1986)

("Rule 60(b) illustrates the purpose of the Federal Rules to dispense justice.").

AIG Baker devotes its opposition brief to an indiscriminate tear that Rule 60 does not

apply to the confirmation of arbitration awards and particularly not to the confirmation of this

arbitration award.  Specifically, AIG Baker argues that (1) Rule 60(b) does not apply to

arbitration awards and cannot be used "to modify the arbitration award itself;" (2) Rule 60(b)

cannot "override the narrow scope of review . . . under the FAA;" (3) Rule 60(b) cannot be used

"to relitigate issues previously decided in the arbitration proceedings;" (4) Rule 60(b) cannot give

AMC relief to which it was not entitled in the confirmation proceedings; (5) granting AMC's

Rule 60(b) motion will circumvent the mandate of the Court of Appeals; (6) the "law of the case"

precludes the court from re-opening the merits of the arbitration; and (7) AMC has presented no

evidence that it has satisfied the judgment.

AIG Baker's first four arguments miss the mark entirely; AIG Baker fails to acknowledge

the distinction between the arbitration award itself and this court's entry of judgment confirming

the arbitration award.  As the Court of Appeals recognized in this very case, "[a] judgment

entered under the Federal Arbitration Act on an award has the force and effect of a judgment

recovered in any other civil action, regardless whether the court enters an order 'confirming,

modifying, or correcting the award.'"  *AIG Baker*, 508 F.3d at 1002 (citing 9 U.S.C. § 13;

*Parsons & Wittemore Ala. Mach. & Servs. Corp. v. Yeargin Constr. Co.*, 744 F.2d 1482, 1484 (11th Cir. 1984)).

Given the mandate of the Court of Appeals, this court would not dream of modifying the arbitration award on any ground outside the FAA. What AMC seeks, however, is not modification of the arbitration award, but a credit toward this court's final judgment confirming the arbitration award. In fact, "Rule 60(b) is an appropriate vehicle by which to challenge a judgment confirming an arbitration award." *Baltia Air Lines, Inc. v. Transaction Mgmt., Inc.*, 98 F.3d 640, 642 (D.C. Cir. 1996) (denying relief under Rule 60(b) because request was not timely); *see also Greenwich Ins. Co. v. Goff Group, Inc.*, 159 F. App'x 409, 411 (3d Cir. 2005) (stating that Rule 60(b) may provide "[r]elief from judgement [*sic*], such as a confirmation order").

At least one district court has granted Rule 60(b) relief under circumstances similar to this case. In *Clarendon Nat'l Ins. Co. v. TIG Reinsurance Co.*, 183 F.R.D. 112 (S.D.N.Y. 1983), the district court was confronted with a Rule 60(b) motion based upon a $363,000[2] mistaken calculation submitted to the arbitrators regarding the amount of Clarendon's payments to TIG. The court had earlier refused to modify the arbitration award under the FAA and entered judgment on that portion of the award. *See Clarendon Nat'l Ins. Co. v. TIG Reinsurance Co.*, 990 F. Supp. 304, 310 (S.D.N.Y. 1998). The court remanded another part of the award to the arbitrators, who acknowledged the miscalculation on remand despite the court's confirmation of that part. *See Clarendon*, 183 F.R.D. at 114.

When the award came back to the district court after remand, the court granted Clarendon's Rule 60(b) motion for relief from the court's earlier confirmation. *Clarendon*, 183

---

[2] Although the parties disputed the correction, they agreed that, if the calculation was corrected, only $346,000 belonged to Clarendon.

F.R.D. at 117.  Noting that "a judgment confirming an award, once entered, has the same force and effect as judgment in a civil action and is 'subject to all provisions of law' relating to judgments . . . includ[ing] the provisions of Fed. R. Civ. P. 60(b)," the district court held that "substantial justice [would] be served" by amending its judgment to give Clarendon credit for the $346,000 plus prejudgment interest on that amount. *Id.* at 117-18.  In so doing, the court distinguished between using Rule 60(b) to modify the arbitration award itself, which is forbidden, and invoking Rule 60(b) to modify the court's <u>judgment</u> confirming the arbitration award, which is permitted. *Id.* at 117.

AIG Baker cites one case that it argues stands for the proposition that Rule 60(b) cannot be used in a proceeding to confirm an arbitration award.  As AIG Baker points out, the court of appeals, in *Washington-Baltimore Newspaper Guild, Local 35 v. Wash. Post Co.*, 442 F.2d 1234 (D.C. Cir. 1971), stated that "neither Rule 60(b) . . . nor . . . any other of the Federal Rules of Civil Procedure was ever designed to apply to proceedings in other than the United States District Courts." *Washington-Baltimore*, 442 F.2d at 1239.  Again, AIG Baker ignores an important distinction in the holding of *Washington-Baltimore*:  that the district court did not err by refusing to apply Rule 60(b) to the final arbitration award <u>itself</u>, not the court's confirmation of the arbitration award.  Specifically, the appellant had sought through Rule 60(b) a remand to the arbitrators.  Thus, despite AIG Baker's characterization, that case is consistent with those holding that Rule 60(b) applies to <u>confirmation orders</u>, rather than arbitration awards themselves. *See, e.g.*, *Fid. Fed. Bank v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) (stating that Rule 60 applies to a judgment confirming an arbitration award because "[a] judgment confirming an arbitration award is treated similarly to any other federal judgment").

AIG Baker's arguments that the court is somehow "overriding" the FAA's review provisions, "re-opening" the arbitration, or allowing "re-litigation" of the underlying dispute are similarly misplaced.  The arbitrators were asked to decide AMC's share of real estate taxes under its two leases with AIG Baker for the years 1998 through 2002 – *i.e.*, the amount of taxes for which AMC was responsible.  (*See* doc. 1, Ex. A).  The arbitrators decided that AMC was responsible for $226,771.76 in real estate taxes for the first half of 2002.  AMC's current motion does not request that the court alter the finding that AMC was responsible for that amount or otherwise modify the arbitration award.  In fact, the court has confirmed the arbitration award in its entirety.  What AMC now seeks is recognition that it has previously satisfied that portion of the judgment entered when the court confirmed the arbitration award -- a judgment like any other civil judgment.

Granting AMC's request under Rule 60(b) does not implicate, in any way, the FAA's "exceedingly narrow" grounds for reviewing an arbitration award because the court is not reviewing the <u>merits</u> of the arbitration award.  Likewise, contrary to AIG Baker's argument, AMC is not relitigating any part of the original dispute.  The original dispute was <u>the amount</u> of taxes for which AMC was responsible; the court is not disturbing that finding.  Like the case cited for AIG Baker's earlier argument, the cases AIG Baker cites in support of these arguments have absolutely no bearing on Rule 60(b) relief from a judgment confirming an arbitration award. *See, e.g.*, *LaFarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1337 (9th Cir. 1986) (holding that a party cannot collaterally attack an arbitration award by untimely appealing a district court's refusal to set aside the award under Rule 60(b)); *Fleming v. NYU*, 865 F.2d 478, 484 (2d Cir. 1989) (stating that Rule 60(b) cannot be used to relitigate the merits where party sought vacation of summary judgment order).

AIG Baker next argues that the court cannot grant AMC any relief to which AMC would not have been entitled at trial.  The case AIG Baker cites for this proposition, *Bear Valley Mut. Water Co. v. R. A. Riddell*, 493 F.2d 948 (9th Cir. 1974), is easily distinguishable.  There, the Ninth Circuit Court of Appeals held that a taxpayer could not use Rule 60(b) to amend the judgment in his refund suit on the basis of loss carryovers that he did not raise prior to his Rule 60(b) motion.  *Bear Valley*, 493 F.2d at 950.  The court of appeals based its decision not on any generally applicable rules, but upon the interplay of two specific Treasury Regulations, which together made the filing of an administrative claim a jurisdictional prerequisite to a suit for refund and prohibited the taxpayer from recovering in his suit for refund on any ground not raised in the administrative claim.  *Id.* at 950-51.

AMC, on the other hand, cites two controlling cases that are much more similar to this one, in which Rule 60(b) was used to relieve judgment debtors from amounts already paid, even though evidence of payment should have been presented at trial.  In the lawsuit that was the subject of *Ferrell v. Trailmobile, Inc.*, 223 F.2d 697 (5th Cir. 1955),[3] the defendant was sued for failure to timely make installment payments on a truck trailer.  At trial, the defendant testified that he made all the payments, but the lien holder testified otherwise; judgment was entered against the defendant.  After trial, the defendant obtained photocopies of money orders bearing the plaintiff's endorsement that had been used to make the payments.  *Ferrell*, 223 F.2d at 698.  The defendant moved for relief under Rule 60(b), but the district court denied the motion.  The Court of Appeals reversed, stating:

---

[3] Decisions of the former Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

> If, in fact, practically conclusive evidence shows that the appellant had actually paid all eighteen installments for the purchase of the trailer, it is obvious that the judgment should be set aside to prevent manifest miscarriage of justice.  In such a case, the ends of justice may require granting a new trial even though proper diligence was not used to secure such evidence for use at the trial.

*Id.*

Relying on *Ferrell*, the former Fifth Circuit Court of Appeals reached a similar conclusion in *Johnson Waste Materials v. Marshall*, 611 F.2d 593 (5th Cir. 1980).  In that case, the U.S. Department of Labor sued several defendants for violations of the minimum wage act.  More than one year after entry of judgment in favor of the U.S. Department of Labor, the defendants moved for relief under Rule 60(b) on the basis of cancelled payroll checks showing the actual amounts paid to employees.  The district court denied the motion, reasoning that the checks were "not newly discovered but merely newly produced evidence."  *John Waste*, 611 F.2d at 597.  The Fifth Circuit once again reversed, reasoning that Rule 60(b)(5) does not expressly require, and the Court has not read into it, a requirement that evidence be "newly discovered" or that the movant exercised "due diligence."  *Id.* at 599.  Rather, the court concluded that equitable considerations support Rule 60(b) relief involving prior payment of an obligation on which a judgment is based:

> [W]hen a party has conclusive evidence that he has paid a portion of the judgment . . ., the judgment beneficiary in fact receives everything to which he is entitled; he is simply denied recovery of a windfall. . . .
>
> Moreover, requiring due diligence when there is proof of payment works an undue hardship on the judgment debtor.  He is forced to pay a second time an obligation he can prove he has already discharged, merely because he was negligent in securing the proof.  Given that the usual purpose of a civil suit is to exact compensation, not to punish the one at fault, it would be manifestly

> unjust to compel Double compensation on the basis of negligence
> alone.

*Id.*

The same rationale unquestionably applies in this case.  The $226,771.76 that AMC should have paid AIG Baker under the lease was to compensate AIG Baker for the real estate taxes on the Kansas property for the first half of 2002.  Presumably, AIG Baker then would have paid that amount to the taxing authority.  Yet, under instructions from the new owner of the property, AMC paid those taxes directly to the taxing authority.  AIG Baker never paid that amount and does not owe those taxes.  Granting AMC relief from judgment in that amount will not deprive AIG Baker of any amount to which it is entitled.  Rather, AIG Baker "will only be denied a windfall recovery," and manifest injustice will be averted.  *See John Waste*, 611 F.2d at 600-01.  Moreover, the result fulfills the parties' intent as observed by the arbitrators: "The intent of the parties . . . is to require Respondent AMC to pay its fair share of the real estate taxes applicable to its leased premises."  (Arbitration Award, p. 2) (doc. 1, Ex. B).

AIG Baker next makes two related arguments: (1) that Rule 60(b) relief would circumvent the mandate of the Court of Appeals; and (2) that the "law of the case" doctrine precludes relief under Rule 60(b).  AIG Baker points out that "[a] trial court, upon receiving the mandate of an appellate court, may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate."  Pl.'s Br. 9 (quoting *Friedman v. Market Street Mortg. Corp.*, 520 F.3d 1289, 1294 (11th Cir. 2008)).  "Similar to the mandate rule," AIG Baker later continues, "the 'law of the case' doctrine precludes reconsideration of 'findings of fact and conclusions of law made by the court of appeals.'" Pl.'s Br. 10 (quoting *Baker v. Int'l Bhd. of Boilermakers, Iron Ship Builders,*

*Blacksmiths, Forgers, & Helpers, Dist. Lodge #57*, 841 F.2d 1067, 1072 (11th Cir. 1998)).

These two arguments are merely two sides of the same coin.  *See Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1333 (11th Cir. 2005) (noting that "[t]he mandate rule is nothing more than a specific application of the 'law of the case' doctrine") (internal quotation marks and citation omitted).

The court first notes, once again, that it has completely fulfilled the mandate of the Court of Appeals.  This court, on May 1, 2008, <u>confirmed the arbitration award in its entirety</u> and entered judgment in favor of AIG Baker, thus satisfying the mandate.  AMC's request, pursuant to Rule 60(b)(5) for relief from <u>this court's judgment</u>, not from the arbitration award – an important distinction, as discussed above – transgresses the mandate in no way.

The "law of the case" does not prohibit this court from entertaining AMC's Rule 60 motion because this Circuit's "case law could not be clearer that the law of the case doctrine cannot apply when the issue in question was outside the scope of the prior appeal." *Transamerica Leasing*, 430 F.3d at 1332; *see also Gulf Coast Bldg. & Supply Co. v. Int'l Bhd. of Elec. Workers*, 460 F.2d 105, 107 (5th Cir. 1972) (stating that "on remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal").  The Court of Appeals did not address this court's power to grant relief from <u>its own</u> judgment, and, in fact, expressly noted that a judgment confirming an arbitration award "has the force and effect of a judgment recovered in any other civil action."  *AIG Baker*, 508 F.3d at 1002 (citations omitted).

Finally, AIG Baker argues that AMC has not established that it has satisfied the judgment.  AIG Baker has not denied that AMC paid the 2002 taxes directly to the taxing authority, but focuses on the fact that AMC has not paid the amount <u>to AIG Baker</u>.  AIG Baker points out that (1) the arbitration award provided that "AMC owes to [AIG Baker]" the amount

of taxes, and (2) this court's order confirming the arbitration award entered judgment in favor of AIG Baker.  Because neither the arbitration award nor this court's judgment expressly allowed AMC to make payments to another entity, AIG Baker argues that AMC is not entitled to relief under Rule 60.  That AMC paid the taxing authority, AIG Baker concludes, "goes directly to the underlying contractual dispute that was subsumed by the arbitration award."  (Pl.'s Br. 11).

Granting AMC relief pursuant to Rule 60, however, does not require this court to examine the underlying contractual dispute.  The arbitrators resolved the contractual dispute by deciding that AMC was responsible under its leases with AIG Baker for a certain amount of real estate taxes.  This court has confirmed that arbitration award and entered judgment for the amount of real estate taxes for which the arbitrators determined AMC was responsible.  AMC has presented unrefuted evidence that it previously paid a portion of those real estate taxes.  Specifically, AMC attached to its answer (doc. 5) copies of checks payable to the taxing authority, and later submitted affidavits (doc. 26) that established that AIG Baker did not pay any portion of the 2002 real estate taxes on the property at issue and that AMC paid those taxes directly to the taxing authority.  Acknowledging the source of AMC's liability under the arbitration award and this court's confirmation order – the real estate taxes – is not a re-examination of the underlying dispute.  AIG Baker's focus upon to whom AMC paid the taxes for which it was responsible is misplaced.  *See, e.g.*, *Sunderland v. City of Philadelphia Gas Works*, 575 F.2d 1089, 1090 (3d Cir. 1978) (finding that defendant's payment to plaintiff's insurance company partially satisfied judgment in favor of plaintiff).

AMC has shown that it paid a portion of the taxes that constitute the judgment this court entered against AMC when it confirmed the arbitrators' decision regarding the amount of AMC's tax liability.  This situation seems to be precisely one that Rule 60 was designed to remedy.  AIG

-13-

Baker, despite a barrage of arguments, has not persuaded this court otherwise.  In sum, "to flog a horse, that if not dead, is at this point in mortal danger of expiring,"[4] Fed. R. Civ. P. 60(b) is properly applied to this court's judgment confirming the arbitration award to grant AMC relief for the amount of taxes it paid directly to the taxing authority.  This result recognizes that AMC has satisfied a portion of this court's judgment confirming the arbitration award and avoids the miscarriage of justice that would result from AIG Baker's knowing receipt of a quarter-of-a-million dollar windfall.

### B.    AIG Baker's Motion to Amend

In its final order, the court entered judgment "in favor of AIG Baker Sterling Heights, LLC" and dismissed the case with prejudice.  In a footnote, the court noted that it "did not decide AMC's counterclaims for CAM fee offsets on the merits, *see* doc. 31; therefore, that part of the court's decision is without prejudice."

AIG Baker now seeks three modifications to that order.  First, AIG Baker argues that the final order is "inconsistent" because it "purports to enter judgment in favor of AIG Baker . . . but then states that the case is 'DISMISSED WITH PREJUDICE.'" AIG Baker believes that its motion for confirmation cannot be both confirmed and dismissed.  Yet, whether the court expressly states so or not, this is exactly what happens in every case: when the court resolves all issues in the case, it enters judgment on all claims and dismisses the action because nothing remains to be done by this court.

On the other hand, the court need not <u>expressly</u> state that a case is dismissed when it resolves all disputes.  This case has a particularly torrid history of AIG Baker vehemently seeking

---

[4] Professor Goldthwait Higginson Dorr III, Ph.D (portrayed by actor Tom Hanks), in the Coen brothers' 2004 remake of the 1955 British classic comedy *The Ladykillers*.

what essentially amounts to a windfall.  Perhaps the court considered the "dismissed with prejudice" language a necessity lest AIG Baker bring an action to confirm the arbitration award a second time.  Nevertheless, AIG Baker's objection to the language used in the final order boils down to semantics; thus, this court is willing to omit the language so as to appease AIG Baker.

AIG Baker's next argument is that "the court's order may not be final" because "the court indicates [in footnote 1] that it has not decided [AMC]'s counterclaims, and excludes the counterclaims from the [final order]."  AIG Baker suggests that the court modify the final order to reflect that AMC's claims were previously dismissed without prejudice.  This argument, like AIG Baker's first, is simply AIG Baker's disagreement with the manner in which the court constructed its sentence; AIG Baker would have the court draft a simple, rather than compound, sentence. The court did not "exclude" AMC's counterclaims from the final order, but simply noted that, because the court dismissed those claims without reaching the merits, those claims were dismissed without prejudice: "the court did not decide AMC's counterclaims . . . on the merits . . . ; therefore, that part of the court's decision is without prejudice."  Because others, like Plaintiffs' counsel, may not connect the independent clause that follows the semicolon with the statement that precedes it, the court will rephrase as a single, unambiguous sentence.

Finally, AIG Baker points out that the court's final order entered judgment only in favor of AIG Baker Sterling Heights, L.L.C., neglecting also to enter judgment in favor of the other Plaintiff, A. B. Olathe II Limited Partnership.  This omission was most assuredly unintentional, and the court will amend the final order to enter judgment in favor of both Plaintiffs.

### III. CONCLUSION

For the reasons stated above, the court concludes that AMC's motion for partial relief from judgment under Fed. R. Civ. P. 60(b)(5) and AIG Baker's motion to modify the final order

are due to be GRANTED.  The court will enter a separate revised final order consistent with this

memorandum opinion.

DATED this 17th day of July, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE